UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT

PEERLESS INSURANCE CO. and       :
SAFECO INSURANCE CO.,            :
                                 :
     Plaintiffs,              :       Civil Action
                                 :       3:10-cv-00868 (JCH)
v.                               :
                                 :
BROAN-NUTONE, LLC, and JAKEL MOTORS  :
INC.                             :
                                 :
     Defendants               :       JULY 2,  2010

## AMENDED COMPLAINT

### COUNT ONE: *Peerless v. Broan-Nutone*  *(Products Liability)*

    1.    The plaintiff, Peerless Insurance Company ("Peerless"), is a corporation organized and existing under the laws of New Hampshire, with a principal place of business at 62 Maple Avenue, Keene, New Hampshire and at all times mentioned in this complaint was authorized to issue policies of insurance in the State of Connecticut.

    2.    At all times mentioned in this complaint, DFP Enterprises, was insured through a  policy of insurance issued by the Plaintiff, policy number CBP 8030568.,

covering real and personal property located at 2 Toelles Road, Wallingford, Connecticut.

    3.       Defendant Broan-Nutone,LLC ("Broan"), is a limited liability company duly organized and existing under the laws of the state of Delaware with it's principal place of business located at 926 W. State Street, Hartford, Wisconsin, and at all times mentioned herein, was engaged in the business of manufacturing, designing, engineering, distributing and selling ceiling ventilation fans.

    4.       Defendant, Jakel Motors, Inc.("Jakel") is a corporation organized and existing under the laws of the state of Wisconsin, and is the successor in interest to Jakel, Inc., which, at all times mentioned herein, was in the business of designing, manufacturing and distributing electronic motors and motion control machinery.

    5.       On or about March 28, 2009, a fire occurred at the premises of DFP,'s property at 2 Toelles Road, Wallingford, Connecticut

    6.       The fire at said property originated at or around a defective ceiling exhaust fan manufactured  and placed into the stream of commerce by Broan.

7.     The fire damaged the insured's real and personal property, and caused other consequential and incidental damages including clean up costs, repair and associated expenses.

8.     At all times mentioned herein, the subject fan, which Broan designed, engineered, manufactured, sold and/or distributed into the stream of commerce, was not modified, changed or abused by plaintiff's insured or other users at said property.

9.     Broan designed, engineered, manufactured, sold and/or distributed into the stream of commerce the aforesaid subject fan in a dangerous defective condition.

10.    The fire and damage to plaintiff insured's property was caused by and/or resulted from the acts and/or omissions of Broan, by and through it's agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority for which Broan is strictly liable pursuant to Connecticut General Statutes §52-572m, et. seq. and §402A Restatement (Second) of Torts, in,

a.      designing and/or engineering and/or manufacturing a dangerously defective ventilation fan that  Broan knew or reasonably should have known exposed users, such as plaintiff's insured to an unreasonable risk of harm;

b       selling and/or distributing the dangerously  defective fan into the stream of commerce that Broan knew or reasonably should have known subjected users  such as plaintiff' insured to an unreasonable risk of harm.

c.      failing to properly and adequately design, engineer and/or manufacture the fan before introducing it into the stream of commerce;

d.      failing to properly and adequately inspect and /or test the subject fan before introducing it into the stream of commerce;

e.      failing to provide adequate and sufficient warnings and instructions with respect to the fan, which rendered it defective and unreasonably dangerous

f.      failing to properly and adequately design, engineer, manufacture, sell and/or distribute into the stream of commerce the subject fan with proper and adequate internal over temperature devices, thermal protector, properly functioning

internal circuit breaker or internal over-temperature alarm system which rendered said fan hazardous and dangerous for it's contemplated, foreseeable and intended use;

   g.      failing to correct the defective and dangerous conditions that Broan knew or should have known existed and created an unreasonable risk of harm to plaintiff's insured.

   h.      failing to comply with industry standards for the proper design and manufacture of the fan.

   i.      failing to exercise due care in the design, manufacture, sale or distribution of the ceiling fan.

   11.     As a result of the damage to insured's property, the insured made a claim to plaintiff, Peerless.

   12.     Peerless has made payments to it's insured pursuant to the aforementioned policy.

   13.     Peerless is subrogated to it's insured's rights.

**<u>COUNT TWO</u>:** *Peerless v. Broan-Nutone*  **(Breach of Warranty)**

1-9.    Paragraphs one through nine of count one are hereby made paragraphs one through nine of Count Two.

10.    In supplying the ceiling exhaust fan, defendant Broan impliedly warranted that the ceiling fan was fit for the ordinary purposes for which it was intended, and was of good and merchantable quality.

11.    Broan breached its warranty by supplying a product unfit for it's ordinary purposes, in that the ceiling fan posed a substantial and unreasonable risk of fire ignition and damage to users and/or consumers such as plaintiff's insured.

12    As a result of the damage to insured's property, the insured made a claim to plaintiff, Peerless.

13.    Peerless has made payments to it's insured pursuant to the aforementioned policy.

14.    Peerless is subrogated to it's insured's rights

***COUNT THREE:*** ***Peerless v. Jakel  (Products Liability)***

1-9.    Paragraphs one through nine of count one are hereby made paragraphs one through nine of Count Three.

10.    At some time prior to March 28, 2009, Defendant Broan-Nutone and defendant Jakel, entered into an agreement whereby Jakel designed, manufactured, and supplied  component parts, namely electrical motors to Broan-Nutone for use in fans manufactured, designed and assembled by Broan-Nutone.

11.    The motor for the above mentioned fan was a Jakel motor.

12.    Defendant Jakel, Inc., designed, manufactured, sold and/or supplied the motor for the subject fan in a dangerously defective condition.

13.    The fire and damage to plaintiff insured's property was caused by and/or resulted from the acts and/or omissions of Jakel, by and through it's agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority for which Jakel is strictly liable pursuant to Connecticut General Statutes §52-572m, et. seq. and §402A Restatement (Second) of Torts, in,

a.      designing and/or engineering and/or manufacturing a dangerously defective motor that Jakel knew or reasonably should have known exposed users, such as plaintiff's insured to an unreasonable risk of harm;

b       selling and/or distributing the dangerously defective motor into the stream of commerce that Jakel knew or reasonably should have known subjected users such as plaintiff' insured to an unreasonable risk of harm.

c.      failing to properly and adequately design, engineer and/or manufacture the motor before introducing it into the stream of commerce;

d.      failing to properly and adequately inspect and /or test the subject motor before introducing it into the stream of commerce;

e.      failing to provide adequate and sufficient warnings and instructions with respect to the motor, which rendered it defective and unreasonably dangerous

f.      failing to properly and adequately design, engineer, manufacture, sell and/or distribute into the stream of commerce the subject motor with proper and adequate internal over temperature devices, thermal protector, properly functioning

internal circuit breaker or internal over-temperature alarm system which rendered said

motor hazardous and dangerous for it's contemplated, foreseeable and intended use;

      g.     failing to correct the defective and dangerous conditions that Jakel knew

or should have known existed and created an unreasonable risk of harm to plaintiff's

insured.

      h.     failing to comply with industry standards for the proper design and

manufacture of the motor.

      i.     failing to exercise due care in the design, manufacture, sale or

distribution of the ceiling motor.

      14     As a result of the damage to insured's property, the insured made a

claim to plaintiff, Peerless.

      15.     Peerless has made payments to it's insured pursuant to the

aforementioned policy.

      16.     Peerless is subrogated to it's insured's rights

## _COUNT FOUR_: _Peerless v. Jakel_    (_Breach of Warranty_)

1-12.   Paragraphs one through twelve of count three are hereby made paragraphs one through twelve of count four.

13.    In supplying the ceiling exhaust fan, defendant Jakel impliedly warranted that the ceiling fan motor was fit for the ordinary purposes for which it was intended, and was of good and merchantable quality.

14.    Jakel breached its warranty by supplying a product unfit for it's ordinary purposes, in that the ceiling fan motor posed a substantial and unreasonable risk of fire ignition and damage to users and/or consumers such as plaintiff's insured.

15    As a result of the damage to insured's property, the insured made a claim to plaintiff, Peerless.

16.    Peerless has made payments to it's insured pursuant to the aforementioned policy.

17.    Peerless is subrogated to it's insured's rights

**_COUNT FIVE_:  _Safeco v. BroanNutone (Products Liability)_**

1.    The plaintiff, Safeco Insurance Company ("Safeco"), is a corporation organized and existing under the laws of Washington, with a principal place of business in Seattle, Washington, and at all times mentioned in this complaint was authorized to issue policies of insurance in the State of Connecticut.

2.    At all times mentioned in this complaint, Connecticut Direct Mail, was insured through a  policy of insurance issued by the Plaintiff, policy number 02BP041248 covering real and personal property located at 2 Toelles Road, Wallingford, Connecticut.

3.    Defendant Broan-Nutone,LLC ("Broan"), is a limited liability company duly organized and existing under the laws of the state of Delaware with it's principal place of business located at 926 W. State Street, Hartford, Wisconsin, and at all times mentioned herein, was engaged in the business of manufacturing, designing, engineering, distributing and selling ceiling ventilation fans.

4.      Defendant, Jakel Motors, Inc. ("Jakel"), is a corporation organized and existing under the laws of the state of Wisconsin, and is the successor in interest to Jakel, Inc., which, at all times mentioned herein, was in the business of designing, manufacturing and distributing electronic motors and motion control machinery.

5.      On or about March 28, 2009, a fire occurred at the premises of Direct Mail's property at 2 Toelles Road, Wallingford, Connecticut

6       The fire at said property originated at or around a defective ceiling exhaust fan manufactured  and placed into the stream of commerce by Broan.

7.      The fire damaged the insured's real and personal property, and caused other consequential and incidental damages including clean up costs, repair and associated expenses.

8       At all times mentioned herein, the subject fan, which Broan designed, engineered, manufactured, sold and/or distributed into the stream of commerce, was not modified, changed or abused by plaintiff's insured or other users at said property.

9.      Broan designed, engineered, manufactured, sold and/or distributed into the stream of commerce the aforesaid subject fan in a dangerous defective condition.

10.     The fire and damage to plaintiff insured's property was caused by and/or resulted from the acts and/or omissions of Broan, by and through it's agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority for which Broan is strictly liable pursuant to Connecticut General Statutes §52-572m, et. seq. and §402A Restatement (Second) of Torts, in,

a.      designing and/or engineering and/or manufacturing a dangerously defective ventilation fan that  Broan knew or reasonably should have known exposed users, such as plaintiff's insured to an unreasonable risk of harm;

b       selling and/or distributing the dangerously  defective fan into the stream of commerce that Broan knew or reasonably should have known subjected users  such as plaintiff' insured to an unreasonable risk of harm.

c.      failing to properly and adequately design, engineer and/or manufacture the fan before introducing it into the stream of commerce;

d.      failing to properly and adequately inspect and /or test the subject fan before introducing it into the stream of commerce;

e.      failing to provide adequate and sufficient warnings and instructions with respect to the fan, which rendered it defective and unreasonably dangerous

f.      failing to properly and adequately design, engineer, manufacture, sell and/or distribute into the stream of commerce the subject fan with proper and adequate internal over temperature devices, thermal protector, properly functioning internal circuit breaker or internal over-temperature alarm system which rendered said fan hazardous and dangerous for it's contemplated, foreseeable and intended use;

g.      failing to correct the defective and dangerous conditions that Broan knew or should have known existed and created an unreasonable risk of harm to plaintiff's insured.

h.    failing to comply with industry standards for the proper design and manufacture of the fan.

i.    failing to exercise due care in the design, manufacture, sale or distribution of the ceiling fan.

11.    As a result of the damage to insured's property, the insured made a claim to plaintiff, Safeco.

12.    Safeco has made payments to it's insured pursuant to the aforementioned policy.

13.    Safeco is subrogated to it's insured's rights.

**COUNT SIX:**  **: Safeco v. BroanNutone    (Breach of Warranty)**

1-9.    Paragraphs one through nine of count five are hereby made paragraphs one through nine of Count Six.

10.    In supplying the ceiling exhaust fan, defendant Broan impliedly warranted that the ceiling fan was fit for the ordinary purposes for which it was intended, and was of good and merchantable quality.

11.     Broan breached its warranty by supplying a product a product unfit for it's ordinary purposes, in that the ceiling fan posed a substantial and unreasonable risk of fire ignition and damage to users and/or consumers such as plaintiff's insured.

12      As a result of the damage to insured's property, the insured made a claim to plaintiff, Safeco.

13.     Safeco has made payments to it's insured pursuant to the aforementioned policy.

14.     Safeco is subrogated to it's insured's rights

**COUNT SEVEN:** *Safeco v. Jakel   (Products Liability)*

1-9.     Paragraphs one through nine of count five are hereby made paragraphs one through nine of Count Seven.

10.     At some time prior to March 28, 2009, Defendant Broan-Nutone and defendant Jakel, entered into an agreement whereby Jakel designed, manufactured, and supplied  component parts, namely electrical motors to Broan-Nutone for use in fans manufactured, designed and assembled by Broan-Nutone.

11.     The motor for the above mentioned fan was a Jakel motor.

12.     Defendant Jakel, Inc., designed, manufactured, sold and/or supplied the motor for the subject fan in a dangerously defective condition.

13.     The fire and damage to plaintiff insured's property was caused by and/or resulted from the acts and/or omissions of Jakel, by and through it's agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority for which Jakel is strictly liable pursuant to Connecticut General Statutes §52-572m, et. seq. and §402A Restatement (Second) of Torts, in,

a.     designing and/or engineering and/or manufacturing a dangerously defective motor that  Jakel knew or reasonably should have known exposed users, such as plaintiff's insured to an unreasonable risk of harm;

b     selling and/or distributing the dangerously  defective motor into the stream of commerce that Jakel knew or reasonably should have known subjected users  such as plaintiff' insured to an unreasonable risk of harm.

c.      failing to properly and adequately design, engineer and/or manufacture the motor before introducing it into the stream of commerce;

d.      failing to properly and adequately inspect and /or test the subject motor before introducing it into the stream of commerce;

e.      failing to provide adequate and sufficient warnings and instructions with respect to the motor, which rendered it defective and unreasonably dangerous

f.      failing to properly and adequately design, engineer, manufacture, sell and/or distribute into the stream of commerce the subject motor with proper and adequate internal over temperature devices, thermal protector, properly functioning internal circuit breaker or internal over-temperature alarm system which rendered said motor hazardous and dangerous for it's contemplated, foreseeable and intended use;

g.      failing to correct the defective and dangerous conditions that Jakel knew or should have known existed and created an unreasonable risk of harm to plaintiff's insured.

h.      failing to comply with industry standards for the proper design and manufacture of the motor.

i.      failing to exercise due care in the design, manufacture, sale or distribution of the ceiling motor.

14      As a result of the damage to insured's property, the insured made a claim to plaintiff,  Safeco.

15.     Safeco has made payments to it's insured pursuant to the aforementioned policy.

16.     Safeco is subrogated to it's insured's rights

**<u>COUNT EIGHT</u>: *Safeco v. Jakel*      (*Breach of Warranty*)**

1-12.   Paragraphs one through twelve of count seven are hereby made paragraphs one through twelve of count eight.

13.     In supplying the ceiling exhaust fan, defendant Jakel impliedly warranted that the ceiling motor was fit for the ordinary purposes for which it was intended, and was of good and merchantable quality.

14.     Jakel breached its warranty by supplying a product unfit for it's ordinary purposes, in that the ceiling motor posed a substantial and unreasonable risk of fire ignition and damage to users and/or consumers such as plaintiff's insured.

15     As a result of the damage to insured's property, the insured made a claim to plaintiff,  Safeco.

16.     Safeco has made payments to it's insured pursuant to the aforementioned policy.

17.     Safeco is subrogated to it's insured's rights

**WHEREFORE**, the plaintiffs claim:

1.      Money damages;

2.      Any other relief, either legal or equitable deemed appropriate by the

Court.

PLAINTIFFS –
PEERLESS INSURANCE
COMPANY, ET AL


By____/s/ William J. Shea_____
**William J. Shea,** Their Attorney
US District Bar #07162
Law Offices Loccisano, Turret and
Rosenbaum
101 Barnes Road, 3d fl.
Wallingford, CT 06492
(203) 294-7800