UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PEERLESS INSURANCE COMPANY and SAFECO INSURANCE CO., | : : : | |
| | : | CIVIL ACTION NO. |
| | : | 3:10-CV-00868 (JCH) |
| Plaintiff, | : : | |
| | : | |
| v. | : : | |
| | : | |
| BROAN-NUTONE LLC and JAKEL MOTORS INCORPORATED | : : | OCTOBER 21, 2011 |
| | : | |
| Defendants. | : : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE TESTIMONY OF
CRAIG W. HUDSON AND CARL M. MAUCIONE**

Pursuant to D. Conn. L. Civ. R. 7(a), the Defendants, Broan-NuTone LLC

("Broan-NuTone") and Jakel Motors Incorporated ("Jakel"), respectfully submit this

memorandum in opposition to Plaintiffs' Motion to Strike the Testimony of Defendants'

Proposed Experts Craig W. Hudson and Carl M. Maucione (Dkt. 40).

I.    **INTRODUCTION**

This is a product liability subrogation action brought by Peerless Insurance

Company ("Peerless") and Safeco Insurance Co. ("Safeco") (collectively, the

"Plaintiffs").  Peerless was the property insurer for DFP Enterprises, the owner of a

warehouse commercial building located at 2 Toelles Road, Wallingford, Connecticut

(the "Premises").  Safeco was the property insurer for Connecticut Direct Mail, a

tenant of the Premises.  Plaintiffs allege that on or about March 28, 2009, a fire

occurred at the Premises, causing damage to their insureds' property, for which the

Plaintiffs paid out under the terms of the applicable insurance policies.  The Plaintiffs

further allege that the fire was caused by a ceiling exhaust fan manufactured by Broan-NuTone which contained a motor manufactured by Jakel.

Plaintiffs disclosed Oscar Berendsohn as an expert witness on their claims of causation and product defect.[1]  Mr. Berendsohn hypothesizes that the fire was the result of a multi-step sequence of events which allegedly occurred within the exhaust fan's motor.  Among the steps in the sequence claimed by Berendsohn are the following, which are relevant to the instant motion:  (a) that the shaft of the motor was misaligned and that there was excess "colloidal" graphite in its bearings, which allegedly caused the bearings to lock; and (b) that the "eye-bar" component of the motor (also known as the I-bar or I-core) contained too little silicon, which allegedly caused the I-bar to be the principal source of heating in the motor.

In response to Berendsohn's claims concerning the shaft and bearings of the motor, the Defendants engaged Craig Hudson as an expert.  Mr. Hudson's report, dated July 1, 2011, is attached as Exhibit 1; his educational and professional background appear on page 17 of his report.  Hudson has worked in the fields of process engineering, failure analysis, and material blending since 1978.  For many years he was laboratory supervisor for the world's largest powdered metal parts producer; later he was manager of research and development for another powdered metal producer.  He taught courses at both companies.  He has written papers on sintered powdered metal materials and soft magnetic powder metallurgy.  He has

---

[1]     Defendants have moved to preclude Berendsohn's testimony.  <u>See</u> Dkt. 42. The details of Berendsohn's involvement and opinions are set forth in the memorandum and supporting papers filed with Defendants' motion.  <u>See</u> Dkt. 43.

been active in the Metal Powder Industries Federation, where he has lectured at several seminars.  He has done extensive work for ASTM International (formerly known as the American Society for Testing and Materials), such as writing several ASTM standards, including two standards concerning the testing of bearings.  In 2011, Hudson received the ASTM Award of Merit and the title of ASTM Fellow.

Responding to Berendsohn's claims concerning the I-bar of the motor, Defendants engaged Carl Maucione as an expert.  Dr. Maucione's report, dated June 30, 2011, is attached as Exhibit 2; his curriculum vitae is attached as Exhibit 3. Maucione has worked in the field of motor metallurgy and electromagnetics since the 1960s, including more than thirty years at General Electric in various scientific and management positions involving metallurgical engineering, materials engineering, process engineering, and industrial control systems.  At GE, he taught courses and won several awards.  He also has numerous publications and patents to his credit.

Plaintiffs now move to "strike" the testimony of Hudson and Maucione.  The sole ground cited by the Plaintiffs in support of the motion is that Hudson and Maucione have not submitted their opinions in this case to "peer review." Significantly, Plaintiffs' motion fails to discuss any of the methods, analyses, or conclusions of Hudson or Maucione.  Plaintiffs do not even attempt to claim that there are any particular opinions of Hudson or Maucione which are unreliable.  Plaintiffs argue merely that the absence of peer review, by itself, is sufficient to preclude the experts from testifying at trial.[2]

---

[2]      Apart from being incorrect, Plaintiffs' argument here is also ironic. Berendsohn's opinions in this case have not been "peer reviewed" by anyone.

## II.   **AUTHORITY AND ARGUMENT**

Under Rule 702 of the Federal Rules of Evidence, the District Court is required to act as a gatekeeper to ensure that unreliable or unhelpful expert testimony is not admitted into evidence.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993).  Thus, expert testimony is only admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; Daubert, 509 U.S. at 594-95 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one.  Its overarching subject is the scientific validity -- and thus the evidentiary relevance and reliability -- of the principles that underlie a proposed submission.").

Daubert's charge to trial courts, to ensure that expert testimony admitted into evidence is both reliable and relevant, applies to engineering and other technical experts, not just "scientific" experts.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Fed. R. Evid. 702 advisory committee's note ("Consistently with Kumho, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful.").

In Daubert, the Court set forth several "general observations" concerning factors for trial courts to consider when assessing the admissibility of expert

---

Indeed, it is only the Defendants' experts who have subjected Berendsohn's opinions to legitimate, qualified scrutiny and criticism.

testimony: whether the theory or technique that the expert relies on has been or could

be tested; whether it has been subject to peer review and publication; what the known

or potential rate of error is; the existence and maintenance of standards controlling

the technique's operation; and whether the theory or technique is generally accepted

in the relevant scientific community.  Daubert, 509 U.S. at 593-94.  The Court was

careful to indicate that these factors are neither exclusive nor mandatory.  "Many

factors will bear on the inquiry, and we do not presume to set out a definitive checklist

or test."  Id. at 593.  "The inquiry envisioned by Rule 702 is, we emphasize, a flexible

one."  Id. at 595 (footnote omitted).

Likewise, in Kumho, the Court observed that "the test of reliability is 'flexible,'

and Daubert's list of specific factors neither necessarily nor exclusively applies to all

experts or in every case."  Kumho, 526 U.S. at 141.  Further, according to Kumho, the

Daubert decision

> made clear that its list of factors was meant to be helpful,
> not definitive. Indeed, those factors do not all necessarily
> apply even in every instance in which the reliability of
> scientific testimony is challenged. It might not be surprising
> in a particular case, for example, that a claim made by a
> scientific witness has never been the subject of peer
> review, for the particular application at issue may never
> previously have interested any scientist.

Id. at 151.

The Rule 702 advisory committee notes state:

> Nothing in this amendment is intended to suggest that
> experience alone -- or experience in conjunction with other
> knowledge, skill, training or education -- may not provide a
> sufficient foundation for expert testimony. To the contrary,
> the text of Rule 702 expressly contemplates that an expert
> may be qualified on the basis of experience. In certain

fields, experience is the predominant, if not sole, basis for
a great deal of reliable expert testimony.

Fed. R. Evid. 702 advisory' committee's note.

It is telling that none of the cases cited by Plaintiffs in their motion and
memorandum provide support for their argument that the absence of peer review is
sufficient, by itself, to support preclusion of expert testimony.  Plaintiffs cite Wills v.
Amerada Hess Corp., 379 F.3d 32 (2d Cir. 2004), in which the Second Circuit
affirmed the trial court's preclusion of plaintiff's toxicology expert.  The expert had
advanced an "oncogene theory" of causation which was admittedly controversial and
was contrary to the generally accepted "dose-response relationship" theory.  Id. at 48-
49.  Although the court did rely in part upon the fact that the expert's novel theory had
not been subjected to peer review; id. at 49; that particular observation was only one
of several different reasons supporting the overall holding that the expert's theory had
"failed to satisfy *any* of the Daubert factors for reliability;" id. at 50 (emphasis added);
and that the expert's conclusions were "not grounded in reliable scientific methods…."
Id.

Plaintiffs also cite Travelers Prop. & Cas. Corp. v. General Elec. Co., 150 F.
Supp. 2d 360 (D. Conn. 2001).  In Travelers, the court denied the defendant's motion
to preclude the testimony of plaintiff's expert, noting that the "[t]he test of reliability …
is a 'flexible' one, and the four factors set forth in Daubert do not constitute a
'definitive checklist or test.'"  Id. at 364 (citing Kumho and Daubert).

Seneca Meadows, Inc. v. ECI Liquidating, Inc., 427 F. Supp. 2d  279 (W.D.N.Y.
2006), also cited by Plaintiffs in their memorandum, did not involve a motion to

preclude expert testimony.  In that case, the opinions of the plaintiff's landfill contamination expert were rejected in a trial decision, after the court found numerous troubling weaknesses and inconsistencies in the plaintiff's expert's analysis and after concluding that the defendant's experts were more persuasive.  Id. at 306.

Finally, the Plaintiffs also cite Astra Aktiebolag v. Andrx Pharms., Inc., 222 F. Supp. 2d 423, 489 (S.D.N.Y. 2000), for the proposition that "peer review and publication of an expert's technique enhance its reliability."  But Plaintiffs' brief omits the remainder of that partially quoted sentence.  The court in Aktiebolag actually went on state that "*the mere fact that an expert's findings have not been peer-reviewed or published is not a sufficient reason to exclude it*."  Id. (citations omitted) (emphasis added), affirmed 84 Fed. Appx. 76 (Fed. Cir. 2003).  The court added that, "[i]n areas raising issues that may never have interested any scientist, the absence of peer review may not be surprising." Id. (citing Kumho, 526 U.S. at 151).

As Aktiebolag indicates, the absence of peer review, by itself and without more, does not support the preclusion of expert testimony.  In Smith v. Ford Motor Co., 215 F.3d 713 (7th Cir. 2000), the circuit court reversed a trial court decision to preclude plaintiff's two experts, a mechanical engineer and metallurgical engineer, based only upon the absence of peer review.

> The district court merely recited the failure of the experts to publish and concluded that their testimony was unreliable. However, … *lack of peer review will rarely, if ever, be the single dispositive factor that determines the reliability of expert testimony*. Without a further explanation of the connection between lack of publication and reliability in this case, we cannot determine the extent to which this factor bears on the reliability of the methodologies used by plaintiff's proposed experts. For example, if [one of the

experts] was merely applying well-established engineering techniques to the particular materials at issue in this case, then his failure to submit those techniques to peer review establishes nothing about their reliability. Similarly, if [the other expert's] accident reconstruction methodology is based on his extensive practical experience in this area, rather than novel methodology subject to publication, his failure to publish does not cast doubt on the reliability of his analytical technique…. On the record before us, we conclude that the district court erred by relying on a *single, potentially irrelevant, criterion* to determine that plaintiff's proposed experts based their conclusions on methodologies that are not sufficiently reliable to satisfy the requirements of Rule 702.

Id. at 720-21 (emphasis added).  See also Phillips v. Raymond Corp., 364 F. Supp. 2d 730, 740 (N.D. Ill. 2005) ( "the particular tests performed by [the expert] were specialized to the facts of th[e] case … and thus were not worthy of industry-wide analysis or peer review"); Loeffel Steel Prods., Inc. v. Delta Brands, Inc. 372 F. Supp. 2d 1104, 1116 (N.D. Ill. 2005) (given expert's substantial experience in the design and manufacture of similar machines, expert's methodology of observing production runs to test performance of machines was appropriate and "it makes little sense to ask whether there has been peer review").

## III.   CONCLUSION

The factors mentioned in Daubert are neither definitive nor dispositive. Plaintiffs' motion focuses exclusively on the "peer review" factor, but it is clear that the absence of peer review, by itself and without more, does not support preclusion of expert testimony.  Under the circumstances presented here, the fact that the opinions of Hudson and Maucione were not submitted for publication or peer review is neither noteworthy nor surprising.  Their opinions are in direct response to certain erroneous

claims of Plaintiffs' expert, Oscar Berendsohn, concerning components of the subject

product.  Hudson and Maucione are specialists whose analyses are supported by

directly relevant knowledge and extensive industry experience, which the Plaintiffs do

not question.  The Plaintiffs make no attempt to explain how their abstract complaint

about the absence of peer review is connected to any particular opinion of Hudson or

Maucione.  Indeed, the Plaintiffs completely fail to identify, much less challenge, any

opinion of either witness as being unreliable.  No good faith basis has been offered by

the Plaintiffs in support of their motion to "strike" the Hudson and Maucione testimony.

The motion should be denied.


DEFENDANTS – BROAN-NUTONE LLC and
JAKEL MOTORS INCORPORATED


By  /s/ George A. Dagon, Jr. - ct06599
    George A. Dagon, Jr. - ct06599
    gdagon@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  (860) 240-6000
Facsimile:   (860) 240-6150
Their Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2011, a copy of the foregoing was electronically filed with the Court.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ George A. Dagon, Jr. - ct06599
George A. Dagon, Jr. - ct06599
gdagon@murthalaw.com

3119364v1