UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PEERLESS INSURANCE CO. and | : | CIVIL ACTION NO. |
| SAFECO INSURANCE CO, | : | 3:10-CV-0868 (JCH) |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| BROAN-NUTONE LLC and JAKEL | : | FEBRUARY 22, 2012 |
| MOTORS INCORPORATED | : | |
|     Defendants. | : | |
| | : | |

**RULING RE: DEFENDANTS' MOTION TO PRECLUDE PROFFERED EXPERT TESTIMONY (Doc. No. 42) AND MOTION FOR SUMMARY JUDGMENT (Doc. No. 44)**

**I.    INTRODUCTION**

Plaintiffs, Peerless Insurance Co. (hereafter "Peerless") and Safeco Insurance Co. (hereafter "Safeco") bring this subrogation action against defendants, Broan-NuTone LLC (hereafter "Broan-NuTone") and Jakel Motors Inc. (hereafter "Jakel") for damages resulting from a fire at a warehouse which was owned and rented by the plaintiffs' insured.  Plaintiffs allege violations of the Connecticut Products Liability Act (hereafter "CPLA"), Conn. Gen. Stat. § 52-572m, et seq, and breach of warranty.

Defendants now seek to preclude one of plaintiffs' experts, Oscar Berendsohn, from testifying.  In addition, defendants seek summary judgment on all of plaintiffs' claims.

**II.    STATEMENT OF FACTS**

On or about March 28, 2009, a fire occurred at a warehouse commercial building located at 2 Toelles Road, Wallingford, Connecticut  (hereafter "the premises").  Defs.' L.R. 56(a)(1) Stmt. ¶ 1; Pls.' L.R. 56(a)(2) Stmt. ¶ 1.  The building is owned by DFP

1

Enterprises. Defs.' L.R. 56(a)(1) Stmt. ¶ 1; Pls.' 56(a)(2) Stmt. ¶ 1. At the time of the fire, Connecticut Direct Mail was a tenant at the premises. Defs.' L.R. 56(a)(1) Stmt. ¶ 2; Pls.' L.R. 56(a)(2) Stmt. ¶ 2. Peerless was the real and personal property insurer of DFP Enterprises. Defs.' L.R. 56(a)(1) Stmt. ¶ 3; Pls.' L.R. 56(a)(2) Stmt. ¶ 3. Safeco was the real and personal property insurer of Connecticut Direct Mail. Defs.' L.R. 56(a)(1) Stmt. ¶ 4; Pls.' 56(a)(2) Stmt. ¶ 4.

Plaintiffs claim that the cause of the fire was a defective ceiling fan, which was manufactured by Broan-NuTone. Defs.' L.R. 56(a)(1) Stmt. ¶ 5; Pls.' L.R. 56(a)(2) Stmt. ¶ 5. The fan contained a motor manufactured by Jakel. Defs.' L.R. 56(a)(1) Stmt. ¶ 5; Pls.' L.R. 56(a)(2) Stmt. ¶ 5. The subject fan is a NuTone Model 696N, and was manufactured in May 2003 by Broan-NuTone. Defs.' L.R. 56(a)(1) Stmt. ¶ 6; Pls.' L.R. 56(a)(2) Stmt. ¶ 6. The parties believe that the motor found in the subject fan following the fire is a Jakel model J239-5138 motor. Defs.' L.R. 56(a)(1) Stmt. ¶ 7; L.R. 56(a)(2) Stmt. ¶ 7.

### III.   MOTION TO PRECLUDE

As defendants' Motion for Summary Judgment rests in large part on the outcome of its Motion to Preclude, the court will address the Motion to Preclude first.

#### A.   Standard of Review

Pursuant to the Rules of Evidence, expert testimony is properly admitted where it "will assist the trier of fact to understand the evidence or determine a fact in issue," and "(1) is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. It is up to the court to ensure that

an expert's testimony "rests on both a reliable foundation and is relevant to the task at hand."  See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597 (1993).  Generally, courts should consider: (1) whether the theory or technique upon which the expert relies can be tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has been widely accepted by the relevant scientific community.  See id. at 593–94; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148 (1999) (applying Daubert factors to all expert testimony).  The party proffering the expert testimony bears the burden of demonstrating its admissibility by a preponderance of the evidence.  See Daubert, 509 U.S. at 592, n. 10.

    B.    Discussion

Defendants assert that Berendsohn's testimony should be precluded because Berendsohn failed to follow a recognized method of fire investigation in determining the cause of the fire, and because his conclusions are not supported by adequate facts and data.

    1.    Berendsohn's Chosen Technique

Defendants argue that the court should preclude Berendsohn's testimony because Berendsohn failed to follow the methods and procedures set forth in the National Fire Protection Association's NFPA 921 Guide for Fire and Explosion Investigations (hereafter "NFPA 921") or use any other generally accepted methods.  See Mem. Supp. Mot. at 11.  Plaintiffs respond that Berendsohn's methods are equally

reliable, and need not comply with NFPA 921 in order to be admissible. See Mem. in Opp. at 10.

NFPA 921 requires an investigator to "use the scientific method . . . as the method for data gathering, hypothesis development, and hypothesis testing regarding the consideration of potential ignition sources." See NFPA 921 § 18.5.3. Though Berendsohn may not have cited to NFPA 921 in preparing his report, it appears that his methods were consistent with these standards. For instance, Berendsohn established various hypotheses and tested them in order to form his conclusions. See Mem. in Opp. at 12–13. Further, Berendsohn identified the device responsible for the ignition of the fire, the first material ignited, and the source of heat energy required for ignition. See id. at 11. Though defendants may quarrel with Berendsohn's methods, such disputes are best addressed in cross-examination, and do not require preclusion. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995).

        2.        Berendsohn's Facts and Data as a Basis for his Conclusions

Next, defendants argue that Berendsohn's testimony is inadmissible because no analytical connection exists between his testing and data, and the conclusions he draws from them. See Mem. Supp. Mot. at 15. Defendants point to several hypotheses which it contends are wrong, and also posits that Berendsohn's fire causation theory relies on improper testing. See id. at 15–24.

Defendants first argue that Berendsohn's hypotheses regarding the pores of the motor, heat contribution, and the thermal cut-out's failure are wrong and points to its own experts, who concluded differently. See Mem. Supp. Mot. at 15–21. In applying the Daubert factors, a court "must focus on the principles and methodology employed

4

by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).  These disagreements between Berendsohn's testimony and the testimony of defendants' experts are factual disputes that go to the weight of the testimony.  Defendants may examine any discrepancies in Berendsohn's findings on cross-examination, and the jury will determine the credibility of each witness.  It is not for the court to preclude plaintiffs' expert witness based on this type of conclusory disagreement.

      Finally, defendants argue that Berendsohn's fire causation theory relies on improper testing because Berendsohn "fundamentally alter[ed]" the motor as a product prior to conducting his tests.  See Mem. Supp. Mot. at 21–24.  Plaintiffs respond that Berendsohn actions were meant to replicate the conditions present in the subject motor and fan, not alter them.  See Mem. Opp. Mot. at 20–21.  Again, this dispute appears to be a factual dispute between the expert witnesses.  Berendsohn's conclusions depend on his hypotheses that the thermal cut-out was defective and non-operational, and that lint that had accumulated in the motor was the first material that ignited.  See id. at 11, 21.  As a result, his tests attempt to replicate these conditions.  See id.  Defendants contest these hypotheses.  See Mem. Supp. Mot. at 23–24.  This type of a dispute is best left to the jury to decide and is not a basis to preclude Berendsohn's testimony.

### III.   MOTION FOR SUMMARY JUDGMENT

####    A.   Standard of Review

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a

6

non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

B.   Discussion

Defendants first state that they are entitled to summary judgment with regard to plaintiffs' CPLA claims because Berendsohn's testimony is inadmissible and, consequently, plaintiffs cannot make out a prima facie case of liability under the CPLA. In addition, defendants assert that without Berendsohn's testimony, plaintiffs cannot prevail on their breach of warranty claims. See Mem. Supp. Mot. Summ. J. at 4–7. As the court has found that Berendsohn's testimony is admissible, defendants are not entitled to summary judgment on these grounds for either the CPLA claims or the breach of warranty claims.

Next, defendants argue that they are entitled to summary judgment as to plaintiffs' breach of warranty claims because plaintiffs' claims must be brought pursuant to the Uniform Commercial Code, and plaintiffs cannot demonstrate that privity of contract exists between plaintiffs' insureds and the defendants.[1]  See Mem. Supp. Mot. Summ. J. at 7–11.  Plaintiffs respond that their breach of warranty claims are based on common law, and Connecticut law does not require privity of contract for a common law breach of warranty claim.  See Mem. Opp. Mot. Summ. J. at 8–11.  In response,

---

[1] Defendants' argument is based on an exception to the CPLA, which provides that "between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim" and instead, is governed by the Uniform Commercial Code. See Conn. Gen. Stat. § 52-572n(c); Reply at 5. Here, however, plaintiffs specifically state that they "do not claim damages for commercial losses" and instead, claim "damages . . . for damage to property other than the subject fan itself." See Mem. Opp. Mot. Summ. J. at 11. Consequently, the court will not address whether plaintiffs' claims could go forward under a theory of commercial loss.

defendants contend that, if plaintiffs' claims are based on common law, they are improper pursuant to the CPLA's exclusivity provision, Conn. Gen. Stat. § 52-572n(a). See Reply at 5–6.

Section 52-572n(a) of the Connecticut General Statutes provides that a "product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Pursuant to section 52-572m(b), "product liability claim" is defined as "all claims or actions brought for . . . property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product," and includes "all actions based on . . . breach of warranty, express or implied . . . ." As the exclusive basis for product liability claims under Connecticut law, the CPLA bars separate common law causes of action in product liability cases. See Densberger v. United Techs. Corp., 297 F.3d 66, 70 (2d Cir. 2002). While a plaintiff may still assert claims based on common law theories of liability, it must do so under "one unified count denominated as a product liability claim." See Walters v. Howmedica Osteonics Corp., 676 F. Supp. 2d 44, 48 (D. Conn. 2009) (quoting Lamontagne v. E.I. Du Pont de Nemours & Co., Inc., 834 F. Supp. 576, 587 (D. Conn. 1993)).

Counts Two, Four, Six, and Eight of the Amended Complaint allege claims for breach of implied warranty against Broan-NuTone and Jakel. Plaintiffs argue that these claims are based in tort under Connecticut common law. See Mem. Opp. Mot. Summ. J. at 11. The CPLA, however, bars a plaintiff from asserting separate common law causes of action in product liability cases. See Densberger, 297 F.3d at 70; Winslow v.

Lewis-Shepard, Inc., 212 Conn. 462, 470–71 (1989).  Consequently, plaintiffs may not assert separate causes of action based on common law breach of warranty, and summary judgment is warranted with regard to those claims.  However, the breach of warranty theory is a proper claim under the CPLA and may be pursued.  Thus, Counts Two, Four, Six, and Eight remain as breach of warranty claims under the CPLA.

**V.    CONCLUSION**

For the foregoing reasons, defendants' Motion to Preclude Proffered Expert Testimony (Doc. No. 42) is **denied**.  Defendants' Motion for Summary Judgment (Doc. No. 44) is **granted in part** with regard to plaintiffs' common law breach of warranty claims, Counts Two, Four, Six, and Eight, and **denied in part** with regard to plaintiffs' CPLA claims, Counts One, Three, Five, and Seven.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of February, 2012.

  /s/ Janet C. Hall
Janet C. Hall
United States District Judge