UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PEERLESS INSURANCE CO. and | : | CIVIL ACTION NO. |
| SAFECO INSURANCE CO, | : | 3:10-CV-0868 (JCH) |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| BROAN-NUTONE LLC, et al | : | APRIL 16, 2012 |
|     Defendants. | : | |

**RULING RE: PLAINTIFFS' MOTIONS TO STRIKE PROPOSED EXPERT TESTIMONY (DOC NOS. 40 and 41)**

**I.   INTRODUCTION**

Plaintiffs, Peerless Insurance Co. (hereafter "Peerless") and Safeco Insurance Co. (hereafter "Safeco"), initiated this subrogation action against defendants, Broan-NuTone LLC (hereafter "Broan-NuTone") and Jakel Motors Inc. (hereafter "Jakel") for damages resulting from a fire at a warehouse which was owned and rented by the plaintiffs' insured. Plaintiffs now move to strike four of defendants' proposed experts.

**II.   DISCUSSION**

The court incorporates by reference the relevant background as set forth in the court's Ruling regarding defendants' Motion to Preclude and Motion for Summary Judgment. See Doc. No. 54.

Pursuant to the Rules of Evidence, expert testimony is properly admitted where it "will assist the trier of fact to understand the evidence or determine a fact in issue," and "(1) is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. It is up to the court to ensure that

1

an expert's testimony "rests on both a reliable foundation and is relevant to the task at hand." See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597 (1993).  Generally, courts should consider: (1) whether the theory or technique upon which the expert relies can be tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has been widely accepted by the relevant scientific community.  See id. at 593–94; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148 (1999) (applying Daubert factors to all expert testimony).  The test of reliability is flexible, however, and the specific factors listed in Daubert "neither necessarily nor exclusively appl[y] to all experts or in every case."  See Kumho, 526 U.S. at 141.  The party proffering the expert testimony bears the burden of demonstrating its admissibility by a preponderance of the evidence.  See Daubert, 509 U.S. at 592, n. 10.

### A.     Craig W. Hudson and Carl M. Maucione

Plaintiffs first argue that the court should exclude defendants' experts Craig W. Hudson and Carl M. Maucione from testifying because both failed to subject their methods and conclusions to peer review.  See Mot. to Strike Testimony of Hudson and Maucione at 2.  Plaintiffs argue that, due to this failure, these methods and conclusions are "too unreliable to form the basis of expert opinion testimony."  See id.

Generally, courts acknowledge that peer review of a particular technique or method enhances the reliability and credibility of that method.  See, e.g., Astra Aktiebolag v. Andrx Pharm., Inc., 222 F. Supp. 423, 489 (S.D.N.Y. 2002) (noting that "peer review and publication of an expert's technique enhance its credibility").  The

Supreme Court was very clear in Daubert and Kumho, however, that peer review of an expert's technique is merely one factor among many to consider in determining whether the expert's testimony is reliable.  See Kumho, 526 U.S. at 151 ("It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist."); Daubert, 509 U.S. at 594 ("The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised.").

Here, defendants' experts are qualified to offer reliable opinions even absent peer review.  Specifically, Hudson specifies in his report that he began his career in the fields of process engineering, failure analysis, and material blending in 1978.  See Hudson Report at 17.  During his career, Hudson was laboratory supervisor for the world's largest powdered metal parts producer.  See id.  In addition, Hudson served as a representative to two standards organizations, the Metal Powder Industries Federation, and ASTM International, and even wrote bearings standards for ASTM.  See id.  Similarly, Maucione has worked in the field of motor metallurgy and electromagnetics since the 1960s, including various positions at General Electric in scientific and management positions regarding metallurgical engineering and technology, materials and process engineering, and process technologies.  See Maucione Curriculum Vitae.

Both Hudson and Maucione offer observations and opinions regarding the materials used in the fan's motor and the likelihood that such materials ignited to cause

the fire in question.  Specifically, Hudson witnessed an examination and testing of particular materials, and performed his own examination on the bearings and rotor from the subject motor.  See Hudson Report at 1.  Similarly, Maucione reviewed reports offered by plaintiffs' expert, Oscar Berendsohn.  See Maucione Report at 1.  On the basis of their reports, coupled with their extensive experience in relevant fields, the opinions offered by both Hudson and Maucione are sufficiently reliable and relevant to the case at hand to be admissible evidence.  Though the lack of peer review of these opinions may be explored on cross examination, the absence of peer review alone does not warrant excluding the testimony of Hudson and Maucione.  See Astra Aktiebolag, 222 F. Supp. 2d at 489 ("[T]he mere fact that an expert's findings have not been peer-reviewed or published is not a sufficient reason to exclude it.  Particularly in areas raising issues that may never have interested any scientist, the absence of peer review may not be surprising.").

      B.     Charles Manning, Jr. and James M. Finneran

Next, plaintiffs argue that the court should exclude testimony by defendants' experts Charles Manning, Jr. and James M. Finneran because neither individual visited the fire scene personally, and because Manning, Jr. did not personally examine the subject motor.  See Mot. to Strike Testimony of Manning, Jr. and Finneran at 3.  Because of this, plaintiffs argue that Manning, Jr.'s and Finneran's opinions lack sufficient factual support.  See id. at 2.

Federal Rule of Evidence 703 provides that "[t]he facts or data . . . upon which an expert bases an opinion or inference may be those perceived by or made known to the expert."  Consequently, a witness is not required to personally visit the scene of an

event in order to offer expert testimony regarding the scene.  See Manoma Realty Mgmt., LLC v. Fed. Pac. Elec. Co., 2007 U.S. Dist. LEXIS 54887, at *17–18 (S.D.N.Y. July 26, 2007) (holding that a court need not preclude an expert from testifying "simply because he or she has not personally been to the scene of the event.").

Both Manning, Jr. and Finneran provide extensive lists of the materials they reviewed prior to offering their opinions.  Specifically, Manning, Jr. reviewed the Wallingford Fire Department Basic Fire Report, as well as reports produced by GAI Engineers and PT and C Forensic Consulting Services regarding the incident.  See Manning, Jr. Report at 1–2.  Further, representatives of Manning, Jr.'s company attended a "joint scene examination" of Connecticut Direct Main.  See Manning, Jr. Report at 1.  Finneran specifies that he reviewed photographs of the scene taken by various individuals, as well as several reports and diagrams of testing.  See Finneran Report at 1–2.  In addition, both Manning, Jr. and Finneran utilized the NFPA 921, a recognized guide for fire investigation,[1] which specifically provides that "reliance on previously collected data and scene documentation should not be inherently considered a limitation in the ability to successfully investigate the incident."  See NFPA 921-17 § 4.4.3.3.  Though neither Manning Jr. nor Finneran may have visited the scene personally, their opinions are based on sufficient facts and data made known to them to be reliable and admissible.

## III.    CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Strike the Testimony of Defendants' Proposed Experts Craig W. Hudson and Carl M. Maucione (Doc. No. 40)

---

[1] This court has previously recognized NFPA 921 as "a peer reviewed and generally accepted standard in the fire investigation community."  See Travelers Prop. & Cas. Corp. v. Gen. Elec. Co., 150 F. Supp. 2d 360, 366 (D. Conn. 2001).

and Motion to Strike the Testimony of Defendants' Proposed Experts Charles Manning Jr. and James M. Finneran (Doc. No. 41) are **denied**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of April, 2012.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge